We thought it would be a good idea to get the lay of the land here. We know that there are motions to consolidate, which we have not granted, but we may. And are there other counsel in the room that have cases that are also affected by the same subject matter? You're asking about defense counsel? Yes, or defense counsel. I believe we're the only defense counsel. Okay. Well, good. Why don't both of you come up and just tell us. Are there other cases pending? We know that there's some other cases in the pipeline here. We don't know whether you're involved with them or not. Yeah, yeah. And if defense counsel have an interest in this as well. For instance, I'm on a panel. Well, I know there is a panel in May that has other dismissals, and that's what it would be, dismissals. Yes, there's for sure the Landis group of cases, I call it. The present group, of course, there's two groups that were consolidated now. I told the 12 cases, there was 11, and then one. Those are the two groups I call them. Okay. Are you involved in the cases in May? I don't know if we had a date set on that that I had seen, but I know the cases of ours that are part of the motion to consolidate are a group that begins with Landis. Okay, all right. And it's Landis, Connor, Speck, and Streber are the four cases. That's just been fully briefed very recently. All right, good. Within the last probably week or so. Were those sua sponte dismissals? Those are dismissals, I believe, pursuant to the same types of orders that are involved here. Very close. I mean, that's why. Okay. Mr. Mulholland? 41B. Good morning, Danny Mulholland. My understanding is we're here on 12 cases today. I'll be arguing on behalf of all the appellees in those cases. I also understand that there are four additional cases that are in the pipeline. My firm is personally not involved in those cases, but there may be other defense counsel here today that are involved in those cases. Is anyone here involved in those other cases? Your Honor, Thomas Gilligan. Yes. And like Mr. McCoy said, there are a group of other cases. I think they went in two waves. My client is in Straber and Stafford. All right. And those are briefed. I don't believe we have oral arguments set for those. Right. And were these, again, sua sponte dismissals? They were similar situations to what we have here. Okay. All right. Are there cases where there's been a notice of appeal but no briefing yet that you're aware of? Not that my client is involved in and not that I'm aware of. Okay. Good. Well, we'll try to sort it all out then. Thank you. It appears that resolution of these cases here then may affect other cases as well, and we'll have to sort that out. Well, good. Mr. McCoy, you ready to proceed? Yes. Yes, this is all set here. Just down a little bit. I haven't grown that tall yet. I don't think I will. This set of cases that's before Your Honor, of course, comes from MDL 875, the asbestos litigation. We are well aware of MDL 875. Which has been winding down. And I say that because looking at the narrowest possible grounds for resolving the issues before the court, there's no need here to be concerned with limiting the powers of the MDL judge, Judge Rubino. That's not necessary to resolve these cases. When I say that, resolve in a way that appellants, plaintiffs would be prevailing here in this court. It's also not necessary to go past the abuse of discretion standard. That standard can be used here to resolve these cases. Are you saying that Judge Rubino did not need to explicate under Poulos any more than he did? I'm saying just the opposite. So you are saying that a judge in this situation, his power is limited by Poulos? His power is limited because Poulos applies to all cases. Not because it's an MDL, but because it applies to all cases, Poulos. What precedential opinion supports the application of Poulos in a non-sua sponte context? I'm not certain if I understand what you mean by non... Well, here there's a motion to dismiss. Yes. There are motions to dismiss. On notice, with time for a response, responses were filed, the judge entered an order. Poulos involved a sua sponte, the court on its own, without a motion, correct? That's correct. So I'm saying what precedential opinion of ours says that Poulos applies in a motion to dismiss context? In a 41B context, Poulos findings are required. And certainly one case that I would point to is the decision in the United States of America versus 8 million in change in currency, which is the opinion of Justice Rendell. And that case states that when there is a dismissal on the merits, such as here, and that case involved a discovery violation effectively, in that case the six factors had to be weighed. And the court criticized the district court for weighing only four of the six. Here there was no findings at all on the Poulos factors. Another significant... And you're saying that was the 8 million dollar case was a motion to dismiss? Yes. I have to go back and read my own opinions. What about the... I'm sorry, I didn't want to interrupt the question here, but tell me a bit about the notice. Why weren't you on notice here? A bit about the... I'm sorry. About being on notice on the October notice that you were subject to dismissal under the... There's no question that there was notification that A012 needed to be met. That's not a concern here in terms of our position. We're not saying we were not on notice of that. What we're saying is we were on notice of a particular standard that existed originally starting in 2007, was changed in 2009. That was a standard that was being satisfied when these submissions were made. When the order came down in November of 2011, which is the subject of this appeal, the basis for the dismissals, that order created certain changes and also... Why weren't you on notice in October? Tell me. We were on notice of the order that was in place in 2009. All right, but what was the difference in the standard that you claim was changed? The difference in the standard... There's several. I mean, the November order was explicit, saying exposure history is required, right? And the motions were... The bulk of the motions were filed thereafter, were they not? Some of these motions, yes, came afterwards. Some came in advance, though. I'm sorry, I interrupted. You were going to say what changed in that order in response to Judge Surikish's question. Right. So the change is that there was some requirement of an exposure history. That was one change. Another change was to require a finding of impairment. The problem with these changes was that they're still not well-defined because exposure history has many different standards in medical science. Well, what do you think it means? Go ahead. I mean, you've been... One of the disadvantages that I have as a judge is I don't live and breathe. Maybe that's not a good verb, the asbestos cases, but you all do. Right. What is it? When someone says you need a complete exposure history in order to diagnose, in order to identify causation in the context of medical parlance and proceeding with litigation, what does it mean? That's a jury question, typically. That's the first thing. It's a fact issue. It means... Well, but you have to have proof you were exposed to a certain product, and you have to give a context, don't you? Right. And that comes down to the specific defendants. The A012 order is not about proving the case against a specific defendant. It's only about whether there's a medical diagnosing report sufficient to establish an asbestos-related injury. It's a medical diagnosing report. It's not a detailed occupational exposure history such as you'd present to a jury defendant by defendant. And the standards that are looked at are referenced in Judge Rubino's opinion. He doesn't adopt any one of those. He references those. The standards are not the only ones that are out there because plaintiffs have cited additional standards. At trial, we use typically the Helsinki criteria with our experts. That's cited within our briefing here. The Helsinki criteria would require an overall long-term 10-year history of exposure, approximately, to diagnose a lung cancer. The radiographic findings alone can be enough. Yeah, but what's... Oh, go ahead. Sorry. And that standard is one of the many standards that can be used by the physicians. It's really dependent on the physicians as to which standards they want to go by. Are you saying that the submissions you had on file that you thought were in compliance with A012 were exactly what would have been required by virtue of pages 13, 14, and 15 of Judge Rubino's November 14th order? I'm saying if you look at what he said about needing an exposure history, yes, these are meritorious claims. That's one of the poorest factors. The question is, are these meritorious claims? We're not here deciding a dispositive motion of the sufficiency of the evidence. That's why I say the abuse of discretion standard was violated in not making these pool of findings. There's a case... At least as to two plaintiffs, right? Brix and Brzezinski, you don't have... You conceived that you didn't have adequate A012 reports. Yes, we did not have causation letters. We just were relying on the allegations and the complaint, which hadn't been contested of lung cancer being caused by asbestos. I want to point out one other case, which is the Levera case. This was cited in our briefs. It's 879 F. Second, 1186. In that case, there was, again, a motion and findings involving a government counterclaim against an SBA borrower. The court at Third Circuit in this case said that it is the function of the appellate court to determine if the court properly balanced the poolage factors and whether the record supports its findings. Here, the district court simply did not undertake any poolage balancing. Although some reviewing courts, in the absence of a district court analysis, have applied their own poolage test, we do not undertake this task here as it would require factual findings, not within the parameters of our review. We, therefore, determine the case must be remanded. That's the scenario that should be applied here. Because certainly, again, within his discretion, Judge Rubino can make specific findings under Poolis and specific findings as to which standard is actually needing to be satisfied. Neither happened in this case. The absence of the Poolis findings themselves is an abuse of discretion. Did you find that he adequately applied the Poolis factors in the November order? No. But there was no appeal? Are there over 70 plaintiffs in that case? There was a large number, yes. And in many instances, because of the large volume of cases that we're dealing with, and you look back over time, the merits of the cases may not be as good as they need to be for going forward for trial because of the age of many of these cases. These cases, in many instances, have been pending for 15, 20 years. They may not have met the standard of impairment if you treat that as a requirement in this finding in November. We have three plaintiffs, Bricks, Brzezinski, and Arden. What did the judge do wrong in those cases? In those cases, the medical records show that there's an impairment. Or in the case of Bricks and Brzezinski, there's certainly a meritorious claim for lung cancer also. But the medical reports didn't show that, did they? The medical reports in Arendt... Well, we'll hear from the defendants on that. Right. They show that he had... Actually, I've got this in my notes. Arendt had treater findings, meaning his own physicians, before the medical experts were hired, found effusions, pleural effusions, atelectasis of the lung, restrictive lung disease, and asbestosis. Those findings are all mentioned in his medical records. In Arendt's? In Arendt's, right. You don't have that in the other two? That's correct. The other two are strictly on the lung cancer basis. There are meritorious claims under Poulos that should be sent back because if you balance the factors... You're saying with Bricks and Brzezinski, you did comply with administrative order number 12? Right. We're saying we did comply to the extent that these people have lung cancer. We're saying, though, we did not have the causation letter under AO12. You concede that? At the time, yes. And why doesn't that doom the appeal then? The only thing that I would say on those two judges is if you look at the findings for the pleadings alleging lung cancer, you look at the Poulos factors, these gentlemen had meritorious claims. They had histories of asbestos exposure, and they had lung cancer. If you apply the Helsinki criteria, that would be a sufficient basis for causation. But so the Poulos factors trump the administrative order in an MDL? The requirement of the Poulos findings is necessary. Well, then what value is having an administrative order like AO12 if you can come in and say, well, we didn't comply with it, but nonetheless we think we have a meritorious claim? AO12 has a great value. And the value is evident in that many, many cases did not survive AO12, and only a small handful of the cases are on appeal here because of the failure to find the Poulos factors in that group and our evaluation of these cases as being meritorious cases that should go forward. Are you saying in all those other cases that didn't survive that the Poulos factors were not applicable? I'm not saying they're not applicable. I'm simply saying that it would be futile to bring all those cases to this court based on the judgment that our firm had. And that's the function of AO12 is to screen out a lot of cases where something can't be proved. So a lot of them were challenged on the basis of the lack of exposure history and were arguably properly thrown out. Is that correct? That's, I believe, correct, yes, in the sense that our firm is not contesting those findings. But you did oppose dismissal at the district court level. You just are not challenging the judge's ruling. There were 70-some cases that were dismissed in November. I'm not sure we contested every one of those cases. I just don't know. I only know the record on these 12 and the general history of the rest. Now, we've got 41. This is a 41B. Yes. So isn't that different? A 41B is exactly what Poulos is intended to govern. Okay, so it applies. My time's up. Any other questions? You had some rebuttal time? Yes, I reserved four minutes for rebuttal. Very good. That's what I've done. Thank you very much, Mr. McCoy. Thank you. Mr. Mulholland? Good morning. Good morning again, Your Honors. Danny Mulholland on behalf of all the appellees. We think, we submit to the court that AO 12, the administrative order that we're here arguing about today, falls comfortably within the district court's broad discretion to manage its docket. In fact, we think it's within the essential discretion that the district court must have to manage its docket, particularly in a proceeding like the one that this appeal arises from, the asbestos MDL, which had 150,000 plaintiffs in it in 2007, which had over 8 million claims. But all the more reason that an order of that kind should be specific. And if something's going to be thrown out based upon a lack of exposure history, should not the administrative order have said that the diagnosis must include XYZ to put people on notice? There's no question here that these plaintiffs were on notice. I'm sure the court is aware. AO 12 says you must submit a medical report, it must be based on objective and subjective criteria, and it must be sufficient to withstand a dispositive motion. By 2007, in the asbestos litigation, really long before that, what that meant to people who do this every day was very clear. And you're saying everybody did it? All of the submissions that were filed pursuant to AO 12 had complete exposure histories? If they were to comply with AO 12, they would have had complete exposure histories. There were many that didn't comply. But the thousands of them did, you're saying? They either did or the cases were dismissed or they went out in another direction under AO 12, to the tune of about 140,000 plaintiffs. And the interesting and I think remarkable thing about that is that that huge number of plaintiffs had their cases resolved as far as the MDL proceeding was concerned, I'm not saying finally resolved, but as far as the MDL proceeding was concerned, without flooding this court with appeals, without really much wailing and gnashing of teeth at all. As a matter of fact, everybody knew the rules, proceeded according to those rules, and did their business. But this group, and it's not even this group, as one of your honors mentioned earlier, scores of these cases were dismissed and not appealed. They were dismissed for the very same grounds that the 12 cases that we're here about today were dismissed, by the same lawyers, by the same judge, and the same orders even. And those cases weren't appealed. But there's even a better reason why they were on notice. This is where it stopped. This notice issue stopped. On November 14, 2011, Judge Rubino issued his first AO 12 order in the CDLO cases and said, explaining, applying AO 12, what this means is you've got to have a complete and comprehensive occupational and exposure history. And so from that point on, certainly these plaintiffs, these lawyers, should have known that, did know that. Because, as somebody pointed out, 70 or so of their cases got dismissed on that day. None appealed, but all dismissed. So... What about the ones before November? I'm not sure I follow. The first order of dismissal, my understanding, was November 11, 2011. The cases that we're here on today got dismissed in March of 2012 and then, I believe, January of 2013. Oh, but the three. The three. Aaron and the two Bs were the November 14, 2011. Correct. No, they were all March, right? They were all March. Oh, they were all March. Or later. I think there was one. The Stafford case was in January of 2013. But the eight were from March. Three from... Now you're confusing me. I thought they were 11 from March. 11 from March. One from January of 2013. I'm sorry. So, there is no doubt at that point. It could be no doubt that that is exactly what this order meant because Judge Rubino was dismissing cases with prejudice on that basis. But how about the... Now... How about the... Forget notice. How about the Pulis factors? Should he not have analyzed those in connection with these cases in March the way he referenced back in November? I think he did. I think he incorporated his... First, I think Judge Rubino in his March order... Does Pulis appear in that March order? That word? I believe in the... Maybe in a footnote, he references his findings regarding that in his March order. But doesn't Pulis require that you really look at the cases and apply the factors? I think it does, and I think he did. I don't see it mentioned. Keep in mind... Excuse me, Your Honor. Keep in mind that functionally, although these are different plaintiffs, and each one is entitled to his day in court. I'm not making that argument. For our purposes here today, though, these cases are functionally identical. They all suffer the same problem. They have different names, and they have different facts in some instances, but at the end of the day, they're dismissed, with the exception of the Brins and Brzezinski cases, which I'll speak to in a minute. They're dismissed basically on the same basis. Because the lawyers didn't supply the history. It's not that they're not meritorious claims. It's that something wasn't filed. Why shouldn't we send it back for an analysis, specific analysis under Pulis? Because Judge Rubino has to be able to manage his docket. The first thing that he did in 2007, after all these cases had accumulated, was to enter an order requiring the plaintiffs to produce prima facie evidence that they have a claim. Well, you're making the MDL into a substantive event, or a substantive handling, where really all it's doing is supposed to centralize for purpose of pretrial proceedings. You're saying the substantive law applies differently in an MDL than it does in other cases? Because the judge needs to manage his docket. Yeah. Your Honor, there are plenty of cases where case management orders have been entered in MDLs, which have had the result of dismissals. We cite these in our briefing. Ray Fannie Mae, Acuna out of the Fifth Circuit is another leading case. The phenylpropanolamine case out of the Ninth Circuit. All of which stand for the proposition that the district court in this case is able to do things like enter these, for lack of a better word, term of art, lone pine orders as one of his tools for managing the cases. Without that, what you have is what you would have, what this circuit would still be burdened with, is what it was burdened with in 2007. That is 150,000 cases which weren't going anywhere. So clearly, the district court in an MDL proceeding has broad discretion. Certainly broad enough to enter an order like this. Let me understand what you're saying. You're saying the pool of supplies, but it really doesn't have to be performed in an MDL. I'm not saying that at all. I'm saying Judge Moreno got it exactly right in what he wrote about PULIS. He says there's no magic formula under PULIS. He says here are the PULIS factors and they're important. He then makes findings which are relevant to those factors. For example, he talks about the willfulness of the plaintiffs in failing to provide compliant AO12 reports. But that's in connection with the November dismissals. Yes, correct, Your Honor. And you're saying that should be viewed as applicable to the March dismissals as well? Absolutely. Even though it's not really referenced. I just want to make that clear. So there is no question, but that these plaintiffs, these lawyers, knew what was required of them. There is no question. From the AO12 order? AO12? I would submit to you, but even nobody, nobody is able to argue the ignorance beyond November 14, 2011 when Judge Moreno issued his first dismissal order. Because at that, it's in plainest day. You're saying then that the plaintiffs' counsel should have moved to supplement their AO12 reports at that point in time? If they had something, they didn't. They didn't supplement at any point. Even as we stand here today, there are not compliant reports in these cases. Now, had there been a motion to supplement in late November of 2011, maybe we had a different case. But there wasn't. Now, here's another point. This is critical. An argument sort of weaves its way through the brief, through the plaintiff's, the appellant's briefs, and was to a certain extent mentioned today, that perhaps the thing to do is to cobble together information, some of which, but very actually little of which, was submitted in response to AO12, some of which might be in the complaint, some of which might be in those documents here, and some of which might be in the interrogatory answers here. And somehow the sum of all that is sufficient to provide, as relevant to the purposes we're here today, a complete exposure history. But that's not what the purpose of AO12 was. The purpose of AO12 was to get a medical report where a doctor says, here is the reason why this plaintiff has a disease associated with inhalation of asbestos fibers. And if we take the jigsaw approach and pull in pieces from everywhere, we don't get that. We don't have that assurance of reliability. So that's not sufficient. So it's not sufficient that there's something in the record. It's what is required, according to your view, is that the doctor have had it as part of the diagnosis. Well, my view, as well as Judge Rubino's view, as expressed in AO12, requiring the medical report. That's the essential requirement of paragraph 4. As discussed in the November 14 argument that the standards for the diagnosis include this. I'm sorry. I'm sorry. And as, I mean, AO12 is very general. But the November 14 article refers to the standard of a diagnosis as requiring one of these measures. Absolutely. I think AO12 is not that general, but certainly the November 14 order is painfully specific. It was painfully specific to 70 plaintiffs, who didn't appeal, by the way. Bricks and Brzezinski, page 36 of the plaintiff's brief, they acknowledge that they don't comply with AO12. Arendt, A-R-E-N-D-T, that was one of the 12 plaintiffs. The plaintiffs did not submit, as part of the AO12 submissions, a medical report with a diagnosis of an asbestos-related disease. This is outlined in our brief, but just to address something that was brought up earlier. They did a CT scan. They did submit a CT scan without a diagnosis. There were other materials that the plaintiffs submitted on appeal, I believe, and later in the district court, but not in response to AO12. But none of those materials were either submitted in response to AO12, nor did they contain a comprehensive exposure history. So Arendt is still out. Clearly, the remainder of the cases are out for the lack of a complete, comprehensive exposure history. And then, Your Honor, let me… I just have one quick question. Is it your contention that we should view the reports of Dr. Schoenfeld, Anderson, and Sadek as medical screeners' reports, that they were just screeners as opposed to, you know, and look at them with a little more scrutiny? Well, Dr. Schoenfeld has diagnosed more than 50,000 people with asbestosis, so he clearly was a screener. Now, it's not required for this court to view him as such. Okay. But doesn't… AO12 requires a hearing if we've got a problem with screening. AO12 sets forth the medical report requirement. We then file motions to dismiss where that requirement was not satisfied. There was a hearing on those, and I… No, no, but there are certain screeners that are suspect because of past history. In those cases, isn't a hearing required before dismissal? I'm not sure how to answer that question. There were other screeners who were suspect on which we filed motions, and there were hearings. So I think maybe the answer to that is yes, or at least that's what happened. I see my time's up. Were there cases where supplemental submissions were made after the November 14th order by various plaintiffs in your cases? There was one case, the Duffy case, where a supplemental submission, non-compliant, mind you, but was made. So I don't really think the issue is at this point. I don't know what frankly would have been the case back then, but certainly they knew how to supplement if they wanted to. They just didn't. And so we're left with what AO12 submissions there are. One final point. All of the stuff that's in the appendices in this case, not all of that was submitted in response to AO12. So with respect to Judge Rubino's findings that the AO12 materials were not compliant, those are subject to, in my view, that finding of fact is subject to a clearly erroneous standard. There's been no showing that that's clearly erroneous. I was going to ask that question about Michaels, for instance. We have a number of papers at 240 Appendix. It says Administrative Order 12 submissions. And it has exhibits. Were all of those submitted as Administrative Order 12 submissions? Let me give two answers to this question. Here's what my notes say about that, and I don't have this committed to memory. The AO12 submission was appendix at 247 to 255. The remainder of the appendix regarding Mr. Michaels was not part of the AO12 submission. So, for example, there were interrogatory excerpts at 256 to 61, not an AO12 submission. There were medical record excerpts 262 to 266, not an AO12 submission. And I believe that's comprehensive as to the submissions that were made on Mr. Michaels. That is, only a fraction of them were AO12 submissions. Okay, because that's not clear. But, more generally, Judge Rubino's findings as to, he was there, and his findings as to the sufficiency of those AO12 submissions are findings of fact, which are not, or have not been demonstrated to be clearly erroneous. I may be mischaracterizing plaintiff's position, and Mr. McCoy will correct me if I'm wrong. But I think he's saying that irrespective of AO12, and also what was set forth in the November order, that the MDL transferee judge in this kind of case, in this circuit, has to apply the Poolis factor so that if there is some merit, plausible or conceivable merit, even though it is not spelled out in the response to the AO12 order, we still have to send it back and have the district judge go through all the Poolis factors. The meritoriousness, you want me to comment on that? No, yeah. The meritoriousness of the claim is the sixth Poolis factor. There are five others. I understand. And even though a claim could conceivably be meritorious, there are circumstances in which either a party or his lawyers or whatever are so intransigent, exhibit such a history of deleteriousness, and I could go on, for example, that those outweigh that. You can still lose. You can have a meritorious claim and still manage to mess it up and lose and get dismissed. That's what happened here. The court laid out the path for them to follow, put signposts along the way, and they refused to follow, failed to follow, and they did it repeatedly. They did it in November, got 70 dismissed. They did it in March, and then later in these other cases that the courts got coming down the pipeline. So merely because one has a potentially meritorious case does not give you a pass on all the procedural safeguards and procedural requirements that the courts, either in an MDL or just in a regular case, might impose. Well, that may be true, but doesn't somebody need to say that, that under Pulis these are outweighed and it would either be us or, if we can do it from the record, or the district court on remand? I think the district court did say that. In its November order, as it applies to the March cases. As it applies to a case that it hasn't seen in the March cases. Well, it had seen them in March, and that's when I would suggest to you that it picked up the November order. Any other questions? Thank you. Thank you, Mr. Mulholland. Mr. McCoy. I want to talk about one other Pulis case for a moment in terms of the importance of Pulis to all cases in the Third Circuit, including MDL cases. And that's a case of Hunt. This was not a published opinion, but it's in 236F Appendix 740. And this was a 2007 decision. This did involve Justice Vineski as a district court judge. District judge, yeah. Right. I think I was reversed on that one, but go ahead. Oh, yes. You took that. Maybe I don't have to read it. Remember those. We got permission from the bench. But it says, before dismissing an action, this is the Third Circuit, a district court is required to make explicit findings regarding the factors enumerated in the Pulis decision. So it's, again, another statement that the Pulis decision is mandatory. And these are not just mass torts of some small amount of value here. These people have serious conditions, and that's one reason why we've got a small group on appeal that has significant value. When people have lung cancer and they die from it and they've got significant asbestos exposure, that's the importance of this group of cases. But if the lawyer doesn't come forward with sufficient showing, I mean, that happens all the time. A lot of meritorious cases get thrown out because the lawyer has not complied with whatever he or she has to comply with. And why should we not say, well, the November, you know, the March situation really follows form to November, so the judge doesn't have to repeat his opinion every time he dismisses the case. Well, it certainly can have an application to cases going forward to the November order. Isn't this the way an orderly MDL transferee judge would proceed? Right. We're not questioning that aspect of it. You're right. But we are questioning, again, the poolist findings are missing here in applying even that November order of 2011 of Judge Urvino. Ten of these 12 people in this group, consolidated group, have medical causation reports from qualified witnesses whose challenges or whose expert qualifications are not challenged. There was a reference to Dr. Schoenfeld in the MDL proceedings in my law firm's cases. The defendants dropped any challenge to him. There was a series of proceedings and they, at the end of it all, just dropped any challenge to his abilities. So we have causation reports, and the sufficiency of those reports, if that's to be evaluated in terms of their meritoriousness and other factors under poolist, that has to be done. Let me give three quick examples of these cases. First off, there's the Hansen case, which I think might go under Dellenbach also. That's the victim and the special administrator, different names. That's a lung cancer case. He had 30-plus years of asbestos work as an asbestos worker, meaning holding the product in his hands every day for a period of 30 years. He was diagnosed with underlying asbestosis. That case has merit. Wilhelm or Stafford case, again, special administrator and victim, he was testing asbestos breaks by machine. A causation letter was submitted for his lung cancer on a motion to reconsider. It was still denied, or the case was still dismissed. He had bilateral asbestos disease in his treating physician records. He had fibrosis. He had plaques on both sides. These are findings of asbestos-related diseases, according to the medical records and the causation reports. Mr. Zerbel, he had fibrosis. He had asbestosis. He had bilateral calcified plaques. 33 years as an electrician, insulating electrical furnaces and other asbestos work. These are in his records. He also has a causation letter for his nonmalignant condition. These cases require the findings under Poulos. Am I correct that you would say, notwithstanding the standards set forth in the November 14th order, that the trial judge would have to go through a Poulos, a rigorous Poulos analysis for each case that he dismisses, even if there's noncompliance with the November 14th order? Yes, and part of it would be to determine whether there is compliance with the November 14th order, and I've already said the November 14th order doesn't tell us which standard to follow. It just says standards of reputable medical organizations. Our physicians are following such standards that we're citing. We pointed out that Helsinki report and the criteria. But if you have not provided sufficient evidence for the court to determine meritoriousness, i.e. the judge thinks the diagnosis had to include that exposure history in order to be a valid diagnosis, aren't you in effect, you know, kind of handicapping or, what do I want to say? You're rendering it impossible for the court to actually weigh that because you haven't shown that it's meritorious. Well, that would be true. They used to stand up today and say it's meritorious. Yes, that would be true. But the court obviously believed that without that exposure history, the diagnosis really doesn't show causation. That would be true if there wasn't an exposure history, but there was. The factors I'm talking about are in the record now. The doctor would not form a causation opinion if there wasn't an exposure history. I can tell you that. But that has to appear, doesn't have to be apparent in the diagnosis that that was done? This is a medical diagnosing report, and these diagnosing reports do state the asbestos exposure history in a way sufficient for the physician to make the connection. They do state it. So you're saying it's adequate if the report says that somebody worked as a plumber for 35 years and they were exposed to asbestos at various times? That's adequate? That's a meritorious claim. All right. Yes. Any other questions? Thank you very much. Thank you, Mr. McCoy, Mr. Mulholland. This was very well argued.